IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BECKY NEW,

           Plaintiff,

    v.

JO ANNE B. BARNHART, Commissioner of Social Security,

           Defendant.

CV-05-938-PK

FINDINGS AND RECOMMENDATION

**TIM WILBORN**
2020-C SW 8th Avenue, PMB # 294
West Linn, OR 97068

    Attorney for plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 SW Third Ave, Suite 600
Portland, Oregon 97204

1 - FINDINGS AND RECOMMENDATION

**JOANNE E. DANTONIO**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave, Suite 2900 M/S 901
Seattle, Washington 98104

    Attorneys for defendant

PAPAK, Magistrate Judge:

## INTRODUCTION

Plaintiff Becky New (New) brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g).

The Commissioner moves the court to remand for further proceedings to correct errors in her decision (docket # 25). New opposes additional proceedings and seeks a remand for the calculation and immediate award of benefits. The Commissioner's motion to remand for further proceedings should be denied and the case should be remanded for an award of benefits.

## BACKGROUND

New was born March 10, 1959. She completed high school and two years of college and worked in electronics assembly. In about April 1996, New began to experience excessive daytime sleepiness reportedly associated with obstructive sleep apnea and narcolepsy. She often missed work, dozed off, burned herself with solder and took unauthorized breaks to walk around when feeling sleepy. New stopped working on January 29, 1999 and alleges disability beginning that date.

New resumed working later in 1999 as a marker for an in-store marketing company hanging coupon machines and placing advertising stickers in stores. She worked four to five hours a day and her monthly earnings did not rise to the level required to meet the regulatory definition of substantial

gainful activity for the next two years. New increased her income through additional part time jobs and had monthly earnings that exceeded substantial gainful activity during 2002 and 2003. Her earnings after 2003 remained below substantial gainful activity.

The Commissioner first denied New's application in October 2001. This court remanded that decision on January 20, 2004, with instructions to the Commissioner to re-evaluate the opinion of Larry Friedman, Ph.D., and to clarify New's mental residual functional capacity. Tr. 744.

On April 20, 2005, after conducting further proceedings, the ALJ issued a written decision after remand, again denying New's Title II application. That decision is now before the court on appeal.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential process of up to five steps for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. New does not challenge the first three steps of the ALJ's decision.

For the purposes of step four, the Commissioner must first assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p.

3 - FINDINGS AND RECOMMENDATION

In the proceedings after remand, the ALJ found that obstructive sleep apnea, idiopathic hypersomnolence, diabetes mellitus, obesity, cognitive disorder, depression and dependent personality traits combine to significantly affect New's ability to perform basic work activities. He assessed New's RFC as follows:

> The claimant has the residual functional capacity to walk 2 blocks at a time, stand 1 hour at a time, and sit 2 hours at a time. She can lift 20 pounds occasionally and 10 pounds frequently. She can climb 6 stair steps. She has average memory and average performance IQ. Her ability to verbalize is above average. She can occasionally retrieve 20 pounds from foot level.

Tr. 724.[1]

At step four, the Commissioner must determine whether the claimant can perform the work she has done in the past. If the claimant can do her past relevant work, the Commissioner must find her not disabled. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(e). In his decision after remand, the ALJ found that New's past work as an electronics assembler did not require the performance of work-related activities precluded by her RFC. Accordingly, he concluded that New was not disabled within the meaning of the Social Security Act.

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 CFR § 404.1520(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 404.1566.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer (docket # 9).

4 - FINDINGS AND RECOMMENDATION

In his decision after remand, the ALJ did not reach step five or make alternative findings regarding New's ability to perform work other than her past work as an electronics assembler.

## STANDARDS

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

The court may remand for an immediate award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting probative evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman v. Apfel*, 211 F.3d at 1178 citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Of course, the third prong of this test is actually a subpart of the second. *See Harman*, 211 F.3d at 1178 n. 7.

## DISCUSSION

New contends the ALJ failed to assess her RFC accurately because he improperly evaluated the evidence and failed to consider the effects of stress on her ability to work. She challenges the vocational evidence regarding the requirements of her past work and asserts that electronics assembly requires work-related activities that she cannot perform.

The Commissioner admits that the ALJ failed to properly evaluate the opinion of Dr. Friedman and the testimony of the psychological expert called for the purpose of clarifying New's mental residual functional capacity. These are precisely the errors the Commissioner was instructed to correct in this court's remand order of January 20, 2004. The Commissioner also concedes that the ALJ relied on inconsistent testimony from the vocational expert (VE) to reach his conclusion that New could return to her past work as an electronics assembler.

The Commissioner does not concede the other errors New asserts. Accordingly, the parties agree that the case must be remanded but dispute whether the Commissioner should be permitted to make additional findings in a third round of administrative proceedings.

### I.    Errors Conceded by the Commissioner

The Commissioner concedes that substantial evidence does not support the ALJ's reason for rejecting Dr. Friedman's opinion. The Commissioner also concedes that the ALJ failed to articulate any reason for rejecting the expert testimony of Sally Clayton, Ph.D., but failed to reflect in his RFC assessment the limitations Dr. Clayton described in her testimony. Finally, the Commissioner concedes that the ALJ relied on inconsistent vocational expert testimony regarding the impact of New's limitations in using her hands.

#### A.    Medical Opinions

Dr. Friedman performed a neuropsychological screening examination on October 11, 2000, to evaluate New's complaints of daytime sleepiness and impaired concentration. The evaluation included a review of unspecified records, a clinical interview and a battery of psychometric tests.

New put forth consistently good effort during testing. Her responses on an aphasia screening device were unremarkable and she was in the average range on a memory scale. She showed

superior verbal intellectual ability and average non-verbal intellectual ability. The appropriate subtests on the intelligence scale indicated weakness in concentration and information processing and her Trailmaking response time indicated moderate to severe impairment in attention and focus. Tr. 660.

New's MMPI-2 profile was typical for individuals who overreact to minor physical dysfunction and assert a wide variety of physical complaints and somatic concerns in response to psychological stress. Her profile suggested she was overly concerned with what others think of her, resulting in withdrawal from social contact.

Dr. Friedman completed a worksheet on which he rated New's ability in twenty-two specific work-related functions. He indicated that New had "good" ability in many of the activities, but only "fair" ability in several categories, including the ability to maintain attention and concentration for extended periods. Based on the worksheet definitions, this meant that New could maintain attention and concentration for extended periods only "some of the time." Tr. 663.

Dr. Clayton is a licensed clinical psychologist who reviewed New's documented medical and psychological history, heard the testimony at the hearing after remand and provided expert testimony. Dr. Clayton testified that the record supported diagnoses of cognitive disorder and major depressive disorder. She opined that New did not meet the criteria for personality disorder, but had chronic personality adjustment difficulties due to dependent traits and distraction caused by her focus on somatic complaints. Dr. Clayton testified that New was quite intelligent but would have difficulties with concentration and would tire easily when doing psychomotor tasks.

Dr. Clayton testified that New's mental health deficits resulted in mild difficulties engaging in activities of daily living, moderate difficulties in social functioning and marked limitations in

concentration, persistence or pace, when distraction from physical complaints was taken into consideration.

Where an ALJ has ignored or improperly evaluated probative evidence, the court has discretion to credit the evidence as a matter of law. *Varney v. Secretary of HHS*, 859 F.2d 1396, 1401 (9th Cir. 1988); *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

As described previously, the court should credit probative evidence as a matter of law if an ALJ has failed to provide legally sufficient reasons for rejecting such evidence, there are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence were credited. Under these circumstances, it is also appropriate to remand for an immediate award of benefits. *Harman v. Apfel*, 211 F.3d at 1178; *Smolen v. Chater*, 80 F.3d at 1292.

It is also appropriate for the court to credit evidence where the ALJ has failed to provide legally sufficient reasons for rejecting such evidence and there has been severe delay in the proceedings. *Hammock v. Bowen*, 879 F.2d at 503. The court may also credit evidence when the Commissioner's failure to correct errors identified by the court in a previous remand leaves the court without confidence that the Commissioner will correct the errors in additional corrective proceedings. *See Ischay v. Barnhart,* 393 F.Supp.2d 1199, 1224 (C.D.Cal. 2005).

Appropriate circumstances for crediting Dr. Friedman's opinion and Dr. Clayton's testimony are present here. The VE testified that a person with the limitations described on Dr. Friedman's worksheet would not be able to perform competitive employment. Tr. 1168. The VE testified that a hypothetical person based on Dr. Clayton's description of New, with marked impairment in

maintaining concentration, persistence or pace would not "be able to maintain competitive employment in any of the claimant's past relevant work." Tr. 1165-66. The parties neglected to ask the VE whether Dr. Clayton's findings would preclude competitive employment in other occupations.

The VE's testimony established that New cannot perform her past relevant work or any other competitive employment if the improperly rejected evidence is credited as true. There are no outstanding issues to be resolved before a finding of disability can be made and the ALJ would be required to find New disabled. *Harman*, 211 F.3d at 1178; *Smolen*, 80 F.3d at 1292.

The court acknowledges that it remains unexplained how New was able to perform substantial gainful activity during 2002 and 2003. This part of the decision was not challenged by New. Nor did the ALJ assert this work history as grounds for rejecting the findings of Drs. Clayton and Friedman. Accordingly, it is not an issue that must be resolved before a finding of disability can be reached with respect to the periods before 2002 and after 2003.

In addition, the errors that required the previous remand have resulted in severe delay in this case. New filed her application in March 1999 and continues to wait after nearly eight years to hear whether she is entitled to benefits. Nearly three years have passed since this court instructed the Commissioner to do exactly what she now seeks a remand to do. Under these circumstances the court should credit the opinions of Drs. Friedman and Clayton as a matter of law. *See Hammock v. Bowen*, 879 F.2d at 503.

B. **Vocational Evidence**

9 - FINDINGS AND RECOMMENDATION

The VE testified that New could not perform her current work as a marker on a full time basis because of limitations in the use of her hands.  The VE did not indicate that work as an electronics assembler would be precluded.  The Dictionary of Occupational Titles (DOT) indicates that work as a marker requires the same or less aptitude in the use of the hands compared with work as an electronics assembler.  The Commissioner concedes that the ALJ failed to resolve this inconsistency and erred by relying on the VE's testimony.

This concession does not persuasively support the Commissioner's request for additional corrective proceedings.  Following the last remand, the Commissioner failed to correct the errors identified at that time and now concedes additional errors in the handling of the vocational evidence.

**II.     Remand**

The court concludes that no useful purpose would be served by further administrative proceedings.  The record has been fully developed and the evidence is not sufficient to support the Commissioner's conclusion that New can perform her past work as an electronics assembler.  *Rodriguez v. Bowen,* 876 F.2d at 763.

The VE's testimony regarding the vocational impact of the limitations described by Drs. Friedman and Clayton established the three prongs of the test in *Smolen* and *Harman*.  Crediting the opinions of Drs. Friedman and Clayton resolves all outstanding issues that must be resolved before a determination of disability can be made and makes it clear that the ALJ would be required to find New disabled.

A remand for benefits rather than corrective administrative proceedings is indicated when the claimant has experienced long delay in litigating her claim.  *Vertigan v. Halter*, 260 F.3d 1044,

1053 (9th Cir. 2001). Permitting the Commissioner repeated opportunities to correct errors in the disposition of a case is unfair as well as time consuming. *Benecke v. Barnhart,* 379 F.3d at 595.

In conclusion, crediting the opinions of Drs. Friedman and Clayton establishes that New cannot work full time in any competitive employment. Although this leaves unexplained how New was able to engage in substantial gainful activity during 2002 and 2003, the Commissioner's failure to comply with earlier remand instructions and the long delay in determining New's claim convince the court that further delay for additional administrative proceedings would not be appropriate. Accordingly, the court should exercise its discretion to remand with instructions to calculate and award benefits.

### III.   New's Remaining Contentions

This court concludes that New should be awarded benefits based on the errors conceded by the Commissioner. Accordingly, it is not necessary for the court to resolve her remaining contentions which the Commissioner does not concede.

///

///

///

///

///

///

///

## **RECOMMENDATION**

For the reasons set forth above, the Commissioner's motion for remand (docket # 25) should be DENIED. The Commissioner's decision should be REVERSED and REMANDED pursuant to sentence four of 42 USC § 405(g) for calculation and award of benefits.

## **SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due December 1, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 17th day of November, 2006.

    /s/ Paul Papak
Paul Papak
United States Magistrate Judge